UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EDWARD SENU-OKE                                              PLAINTIFF

VS.                            CIVIL ACTION NO. 3:06CV468TSL-LRA

JACKSON STATE UNIVERSITY,
DR. RONALD MASON, JR.,
DR. JOSEPH STEVENSON AND
DE. VELVELYN B. FOSTER                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendants
Jackson State University, Dr. Ronald Mason, Jr., Dr. Joseph
Stevenson and Dr. Velvelyn B. Foster for summary judgment pursuant
to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff
Edward Senu-Oke has responded to the motion and the court, having
considered the memoranda of authorities, together with attachments
submitted by the parties, concludes that plaintiff's federal
claims against all defendants are due to be dismissed, and that
plaintiff's remaining state law claims should be remanded to state
court.

     This case stems from plaintiff Senu-Oke's "dismissal" from
the Executive Ph.D. (EPHD) program at Jackson State University
(JSU) in August 2004.  Plaintiff filed his complaint in the
Circuit Court of Hinds County, Mississippi on July 21, 2006,
against JSU, Dr. Joseph Stevenson, director of the EPHD program,
Dr. Velvelyn B. Foster, interim provost, and JSU President Dr.

Ronald Mason, asserting claims under 42 U.S.C. § 1983 based on allegations he was dismissed from the program because of his national original, Nigerian, and without being afforded due process, in violation of his constitutional rights to equal protection and due process, respectively, and also advancing claims under state law for breach of contract and intentional infliction of emotional distress.  Defendants filed their motion for summary judgment asserting various grounds for dismissal. They argue that all of plaintiff's claims against JSU, an agency of the State of Mississippi, and against JSU employees in their official capacities, are barred by the Eleventh Amendment.  They argue additionally that plaintiff's federal claims against them are barred in any event because JSU and its employees sued in their official capacities are not "persons" subject to suit under § 1983.  Further, the individual defendants argue that while it does not appear from the complaint that they have been sued in their individual capacities, if the court does conclude they have been so sued, then the facts demonstrate plainly that they have qualified immunity with respect to plaintiff's § 1983 claims against them.  Defendants additionally argue that plaintiff's state law claims are barred because plaintiff failed to comply with statutory appeal procedures, that is, that he failed to exhaust his administrative remedy, and that the individual defendants are in any event exempt from liability as to

2

plaintiff's state law claims under the Mississippi Tort Claims
Act, Miss. Code Ann. § 11-46-7(2).

The basic facts, as drawn from the complaint, the parties'
memoranda and the record, are largely undisputed.  Beginning in
the fall semester of 2004, JSU first offered its Executive Ph.D
program (EPHD), which it describes as a unique, non-traditional
program designed specifically for professionals who want to obtain
a doctorate degree in higher education.  The program was designed
as an "accelerated, executive cohort based program."  The program
was designed so that students would have two years to complete the
program, doing so by completing their dissertation while at the
same time attending classes, and so that all the students in the
program would take all classes with each other at the same time,
i.e, comprised a "cohort."

Mr. Senu-Oke, a native citizen of Nigeria and a resident of
Illinois, is the Chair of the Department of Social and Behavioral
Sciences at Joliet Community College in Joliet, Illinois.  In
October 2003, Mr. Senu-Oke contacted Dr. Fran Bridges, pre-
planning coordinator for JSU's EPHD, inquiring about the program
and ultimately submitted an application for admission to the
inaugural cohort.  In June 2004, Mr. Senu-Oke was advised in a
letter from Dr. Stevenson, founding director of the EPHD program,
that he had been accepted for admission to the program.  Mr. Senu-

Oke was required to sign a "partnership agreement" and make a deposit of $2,000 to hold his place.

In August 2004, Mr. Senu-Oke arrived in Jackson for a scheduled week-long orientation for the EPHD program that was to commence Monday, August 15.  Mr. Senu-Oke checked into the local hotel and attended a meeting on Sunday afternoon, but early Monday morning, before the orientation program formally commenced, he checked out of the hotel and returned to Joliet without informing anyone from JSU that he was leaving or why he was leaving.  Mr. Senu-Oke did not communicate with JSU officials that day or the next, until after he received a telephone call from Ms. Bridges on Tuesday afternoon.  Ms. Bridges, not knowing where Mr. Senu-Oke had gone and concerned that something untoward may have happened to him, had telephoned Mr. Senu-Oke's contact numbers and found him at his office in Joliet.  Mr. Senu-Oke tried to explain to Ms. Bridges that he had been required to return to Joliet for job-related reasons, but did not say what those reasons were.  Later that afternoon, he sent Ms. Bridges an email stating that he had to return to Joliet to attend to "some job related emergency," and asking that he be allowed to "go forward and complete the registration process."

Though Mr. Senu-Oke gave no further explanation for his absence, JSU officials assumed he left because of a retirement function for the president of Joliet Community College, who had

4

unexpectedly announced his retirement.  As it turns out, Mr. Senu-Oke had been under consideration to assume the presidency of Joliet Community College and had been asked to return to campus by the Chairman of the Board of Trustees; but he never told this to JSU officials.

After consulting with JSU's general counsel's office, Dr. Stevenson notified Mr. Senu-Oke that he had breached the partnership agreement by absconding and that he had compromised the plan of study as designed and that he therefore would not be allowed to participate in that initial cohort of the EPHD.  Mr. Senu-Oke spoke with Ms. Bridges by phone, and corresponded with Ms. Bridges and Dr. Stevenson by email and regular mail asking for reconsideration and repeatedly requesting that he be allowed to meet in person with Dr. Stevenson, but his requests were refused.

JSU and Drs. Mason, Stevenson and Foster in their official capacities[1] have asserted that they have Eleventh Immunity as to

---

[1]    In the context of a § 1983 claim, the Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and consequently "it is no different from a suit against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989); see also Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citations omitted).

all plaintiff's claims against them, yet as plaintiff points out,
defendants waived their Eleventh Amendment immunity by removing
the case from state court.  See Lapides v. Board of Regents of
Univ. Sys. of Georgia, 535 U.S. 613, 122 S. Ct. 1640 (2002)
(concluding that removal is a form of voluntary invocation of
federal jurisdiction that constitutes the waiver of a state's
Eleventh Amendment immunity from suit); Meyers ex rel. Benzing v.
Texas, 410 F.3d 236, 242–43 (5th Cir. 2005) (noting that while
Lapides considered only waiver-by-removal in context of state law
claim, "Lapides's interpretation of the voluntary invocation
principle, as including the waiver-by-removal rule, applies
generally to any private suit which a state removes to federal
court" so that State's removal waives Eleventh Amendment immunity
for both federal-law and state-law claim).  Consequently, there is
no merit to defendants' assertion of Eleventh Amendment immunity.

However, as defendants correctly note, plaintiff has no valid
federal claim against JSU and defendants Mason, Stevenson and
Foster in their official capacities because plaintiff's only
federal claims against them arise under 42 U.S.C. § 1983 and seek
only monetary damages, and it is well established that "neither a
State nor its officials acting in their official capacities are
'persons' under § 1983."  Will v. Michigan Dept. of State Police,

491 U.S. 58, 71, 109 S. Ct. 2304 (1989);[2] see also Lapides, 535 U.S. at 617, 122 S. Ct. at 1643 (stating that "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted") (citing Will).  Accordingly, plaintiff's federal claims against JSU and his official-capacity claims against Mason, Stevenson and Foster must be dismissed.

The individual defendants deny that plaintiff has sued them in their individual capacities, but argue that if the court concludes otherwise, they are entitled to qualified immunity as to plaintiff's § 1983 claims.  Under § 1983, a claimant may sue a natural person in his individual capacity, his official capacity, or both.  Some federal courts hold that a § 1983 plaintiff must designate the capacity in which the defendant is being sued and deem the defendant to have been sued in his official capacity if no such designation is made.  See, e.g., Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995) (holding that "a plaintiff who wishes to sue a state official in his personal capacity must so specify in her complaint," so that "[i]f a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims"); Soper v. Hoben, 195 F.3d 845, 853 (6th

_____

[2]      42 U.S.C. § 1983 imposes liability on any "person," acting under "color of state law," who deprives, or causes to be deprived, any other person of "rights, privileges, or immunities secured by the Constitution."

Cir. 1999) (stating that "[g]enerally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities."). In the Fifth Circuit, however, if it is not clear from allegations of the complaint whether a defendant has been sued in his official or individual capacity, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued. <u>Forside v. Mississippi State Univ.</u>, 2002 WL 31992181, 5 n.5 (N.D. Miss. 2002) (noting that "[w]hile some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits, . . . the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings."); <u>see</u> <u>also</u> <u>Kentucky v. Graham</u>, 473 U.S. at 167 n.14, 105 S. Ct. 3099 ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically indicate the nature of the liability sought to be imposed.") (citations omitted); <u>Hopkins v. Gusman</u>, 2007 WL 2407247, 4 (E.D. La. 2007) (citing <u>Parker v. Graves</u>, 479 F.2d 335, 336 (5th Cir. 1973) (looking to complaint to determine nature of plaintiff's claim in § 1983 case), and <u>United States ex rel.</u> <u>Adrian v. Regents of Univ. of Ca.</u>, 363 F.3d 398, 402-03 (5th Cir. 2000) (finding course of proceedings indicated that defendant was

8

sued solely in official capacity because plaintiff never challenged assertion made by defendant in motion to dismiss that defendant was sued in official capacity).[3]

Plaintiff's complaint is not particularly illuminating on this issue. In the caption of his complaint, plaintiff merely lists the names of the defendants and does not identify the capacity in which they were intended to be sued.  In the body of the complaint, he designates the offices held by each of the individual defendants and declares that "[a]t all relevant times hereto, Drs. Stevenson, Foster and Mason were acting in the course and scope of their employment with JSU and accordingly, their actions are imputed to JSU under the doctrine of *respondeat superior.*"  But he does not refer to actions taken by defendants in their "official capacity," or solely as representatives of JSU or on behalf of JSU, and the notion of one's acting in the course and scope of his or her employment is not inconsistent with an intention to also hold the employee personally liable

Evaluation of the course of proceedings sheds very little light on the subject.  For their part, defendants do not appear to have interpreted plaintiff's complaint as alleging individual-

---

[3]    Defendants' reliance on cases such as <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 619 (8th Cir. 1995), is inexplicable, given the cases from the Fifth Circuit and district courts within this circuit making clear that the Fifth Circuit has rejected rigid pleading requirements to specify individual or official capacity in § 1983 suits.

capacity claims against them.  In fact, in his response to
defendants' motion, plaintiff argues, ironically, that defendants
are foreclosed from defending on the basis of qualified immunity
given that this is an affirmative defense which they failed to
plead in their answer (which they most assuredly would have done
had plaintiff clearly pled individual-capacity claims).  To this,
defendants respond that they sufficiently raised a qualified
immunity defense in light of the assertion in their answer that
the decision to deny plaintiff the opportunity to continue in the
EPHD program "was reasonable [and] taken in good faith"; yet the
court doubts that defendants' purpose in making this assertion was
to raise a qualified immunity defense.[4]  Moreover, in their
motion, defendants begin with the premise that plaintiff has not
sued them in their individual capacities, and assert qualified
immunity only as an alternative argument.  Cf. Forside, 2002 WL
31992181, at 5 (assuming that plaintiff was pursuing claims
against defendants in both their official and individual
capacities based on course of proceedings, where defendants had
"briefed the issue of qualified immunity under 42 U.S.C.
§ 1983, and argued that [they] should be granted qualified
immunity").  For his part, in his response, plaintiff does not

---

[4]      Having said that, given that plaintiff did not clearly
plead an individual-capacity claim, to the extent the court
concludes that he intended to do so, the court would also conclude
that defendants have adequately raised their defense of qualified
immunity.

even acknowledge defendants' argument that he has not sued them
individually; rather he goes straight to attacking their arguments
in support of finding qualified immunity.  Of course, the fact
that plaintiff is defending defendants' motion on the basis that
defendants are not entitled to qualified immunity obviously
indicates that at least at this point, his intention is to proceed
against them in their individual capacity.

What is most pertinent here, though, and what leads the court
to conclude that plaintiff is proceeding against defendants
individually is the nature of the relief sought, for plaintiff is
suing under § 1983 only for monetary relief and under the law, or
reasons given supra, he cannot recover such damages from JSU or
the defendants in their official capacities.  Rather, such relief
is only available against the defendants individually, and
therefore, the court assumes he intended to sue them in their
individual capacity.  The court thus considers defendants'
assertion of qualified immunity as a basis for summary judgment.

Plaintiff alleges two claims under § 1983, the first that his
right to due process was violated when Dr. Stevenson
"unilaterally" dismissed him from the EPHD program and refused to
give him a hearing so that he could "plead his case" to Dr.
Stevenson, and the second, that defendants discriminated against
him on account of his national origin in violation of his right to
equal protection.

11

"A state official exercising discretionary authority is shielded from personal liability by qualified immunity, unless at the time and under the circumstances all reasonable officials would have realized that their conduct was proscribed by the federal law upon which the suit is founded." Pradhan v. Texas A&M Univ. Sys., 2001 WL 872742, *1 (5ᵗʰ Cir. 2001).

Though not entirely clear, defendants appear to take the position that in light of the undisputed fact that Mr. Senu-Oke, although admitted to the EPHD program, did not complete the registration/enrollment process, he had no property interest at all, and that in all events, even if Mr. Senu-Oke did have a property interest, reasonable officials under the circumstances would not have realized this and would therefore not have understood that he was entitled to any process relative to the decision to "dismiss" him from the program.  They also argue, though, that while plaintiff seems to be of the view that the guarantee of due process entitled him to a "face-to-face" meeting with Dr. Stevenson to plead his case, no such "process" was due him.  Instead, as any reasonable official would have concluded, the most that due process required was that Mr. Senu-Oke be given the opportunity to make his position known to defendants and since he was given this opportunity, defendants reasonably concluded he was afforded due process.

Property interests protected by the due process clause are "defined by existing rules or understandings that stem from an independent source such as state law."  Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).  A property interest in his place in the EPHD program would likely have arisen had Mr. Senu-Oke actually enrolled in the program and paid his tuition.  See Harris v. Blake, 798 F.2d 419, 422 (10th Cir. 1986) (observing that "[t]he actual payment of tuition secures an individual's claim of entitlement"); Thomas v. Gee, 850 F. Supp. 665, 674 (S.D. Ohio 1994) (recognizing that property interest based on contractual relationship may arise ". . . when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school. . . .") (quoting Behrend v. State, 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282, 379 N.E.2d 617, 620 (1977)).  Here, however, while plaintiff had been accepted for admission to JSU and paid a $2,000 deposit, it is undisputed that he left the orientation prior to completing the process of registration/enrollment, including the payment of his tuition/fees.[5]  Courts have held that acceptance or admission, as

---

[5]     Indeed, in an email to pre-program coordinator Fran Bridges on Tuesday, August 17, Mr. Senu-Oke wrote, "I hope and pray that, you will let me go forward and complete the registration process.  Upon hearing from you, I will forward my fees to your office immediately. . . ."  Given that Mr. Senu-Oke was never formally enrolled in the EPHD program, to say that he was "dismissed" from the program, which is the characterization plaintiff has chosen, may not be altogether accurate.  It may be more accurate to say that Mr. Senu-Oke's acceptance was revoked.

contrasted with actual enrollment, does not create a property interest.  See Martin v. Helstad, 699 F.2d 387, 392 (7ᵗʰ Cir. 1983) (Coffey, J., concurring)(expressing view that a person, though having been offered admission, had "no constitutionally protected property interest in admission to law school prior to formal enrollment and matriculation" so that discussion of the process afforded such plaintiff was "entirely superfluous"); Sternberger v. Jones, 1995 WL 377057, 3 (E.D. La. 1995) ("While a student already admitted into a school may have a property interest in his continued enrollment, a prospective student has no constitutional due process right to a hearing to prove his qualifications and no constitutional right to admission.").  The issue is less clear-cut, perhaps, because while he had not formally enrolled, Mr. Senu-Oke had signed a "partnership agreement" with JSU which purported to set forth the parties' rights and obligations to each other.  Notwithstanding this agreement, however, in light of the fact that Mr. Senu-Oke had not completed the steps necessary for registration, defendants could have reasonably concluded that he had no property interest.

Yet even if the court were to assume that plaintiff had a property interest and that defendants could not reasonably have concluded otherwise, defendants would still be entitled to qualified immunity because they could reasonably have concluded that he was afforded all the process to which he was entitled.  In

14

this regard, the Supreme Court and Fifth Circuit have made it clear that the process which must attend student dismissals, whether for academic or disciplinary reasons, is minimal.  A student dismissed for academic reasons is not entitled to any type of due process hearing, and all that is required for disciplinary actions is "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'"  Shaboon v. Duncan, 252 F.3d 722, 731 (5th Cir. 2001) (quoting Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 85-86, 98 S. Ct. 948, 953 (1978)).  Here, Mr. Senu-Oke's "dismissal" is best viewed as an academic dismissal, but even if it qualified as disciplinary, he was given ample opportunity to communicate with Dr. Stevenson in writing, so that he could "characterize his conduct and put it in what he deem[ed] the proper context."  Id. Therefore, as defendants did not violate any arguable right of Mr. Senu-Oke to due process by declining his request for a face-to-face meeting, they are entitled to qualified immunity.

In addition to his due process claim, Mr. Senu-Oke alleges that defendants discriminated against him on the basis of his national origin in dismissing him from the EPHD program.  For an equal protection claim to survive a motion for summary judgment premised on qualified immunity, the plaintiff "must demonstrate

that the governmental official was motivated by intentional discrimination on the basis of race." <u>Felton v. Polles</u>, 2000 WL 33968259, at 2-3 (S.D. Miss. Jan. 14, 2000) (citations omitted); <u>Tate v. Waller</u>, 2006 WL 3103005, 3 (S.D. Miss. 2006).  The qualified immunity analysis is thus essentially a merits analysis:

> When an official's intent or the reasons for his or her actions are an essential element of the underlying violation, we have treated factual disputes over intent just like any other factual dispute that can justify a denial of qualified immunity.  <u>See</u> <u>Tompkins v. Vickers</u>, 26 F.3d 603, 607-10 (5th Cir. 1994) (holding that the existence of a retaliatory motive was a factual issue that precluded summary judgment on qualified immunity in a First Amendment case in which a teacher claimed that he had been transferred in retaliation for criticizing the school superintendent); <u>see also</u> <u>Coleman v. Houston Indep. Sch. Dist.</u>, 113 F.3d 528, 535 & n.6 (5th Cir. 1997) (stating that the court lacks jurisdiction on interlocutory appeal to review whether there is a genuine issue of fact as to intentional discrimination).

<u>Kinney v. Weaver</u>, 367 F.3d 337, 373 (5th Cir. 2004).

In support of their motion, defendants take the position that the reason plaintiff was not allowed to return to the program had nothing to do with his national origin but was instead based solely on his having absconded from the orientation, which was the "first fundamental part" of the EPHD program, as explained by Dr. Stevenson in his deposition:

> The real issue was he missed out on the first fundamental part of the program, and that is to completely participate in the orientation and the academic activities associated with the orientation. . . .  At the end of the day, he did not participate in discussing about dissertation design.  He did not participate in discussions with leadership context with regard to how you balance between work and school, et

16

cetera.  He did not participate in the anchoring part of
the program.

Defendants conclude that since plaintiff has not come forward with
any proof that he was treated differently from any other similarly
situated individual, he cannot prevail.  <u>See</u> <u>Bell v. South Delta
School Dist.</u>, 325 F. Supp. 2d 728, 740-41 (S.D. Miss. 2004) (to
prevail on equal protection claim, plaintiff must prove that
similarly situated individuals were treated differently).

Plaintiff argues in response that while he missed part of the
orientation program, other participants in the EPHD program, all
non-Nigerian, "missed a module or two during the course of the
(two-year) program," as admitted by Dr. Stevenson, and yet none
were dismissed for missing modules or for any other reason.  He
points out that of the three cohorts that have gone forward in the
EPHD program during the initial and succeeding years involving
some sixty-nine students, the only person to have been dismissed
for failing to complete program requirements was Mr. Senu-Oke.  He
concludes that this evidence, that he, the only non-United States
citizen, was dismissed for missing two days of orientation
although many other students have missed class modules, is enough
evidence of discrimination and disparate treatment to create a
genuine issue of material fact on defendants' intent.  The court
concludes otherwise.  The fact is, plaintiff is the only person
who ever departed from orientation prior to even registering and
then missed an appreciable portion of the orientation without

17

offering other than a vague explanation for his actions.  Other
students who actually registered, remained for orientation and
matriculated into the program, were not similarly situated to this
plaintiff, and therefore, the fact that they were not dismissed
from the program for missing a class or two does not tend to prove
that plaintiff was the victim of discrimination.  Accordingly,
plaintiff has failed to create a genuine issue of material fact on
his claim of intentional discrimination so that defendants are
entitled to qualified immunity (as well as to summary judgment on
the merits).

Based on the foregoing, the court concludes that defendants
are entitled to summary judgment on all of plaintiff's claims
arising under federal law.  The court is of the opinion that
plaintiff's remaining state law claims, for breach of contract and
intentional infliction of emotional distress, should be remanded
to the Circuit Court of Hinds County, from which this case was
removed.  See 28 U.S.C. 1367(c)(3) ("The district courts may
decline to exercise supplemental jurisdiction over a claim . . .
if . . . the district court has dismissed all claims over which it
has original jurisdiction").

Based on the foregoing, it is ordered that defendants' motion
for summary judgment as to all of plaintiff's federal claims is
granted.  It is further ordered that plaintiff's remaining state

18

law claims are remanded to the Circuit Court of Hinds County,

First Judicial District.

SO ORDERED this 12th day of October, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE